```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

**James A. Byron**

    v.                                              Case No. 18-cv-684-PB
                                                          Opinion No. 2019 DNH 131

**Andrew Saul, Commissioner**
**Social Security Administration**


## MEMORANDUM AND ORDER

James Byron challenges the denial of his application for disability insurance benefits pursuant to 42 U.S.C. § 405(g). He contends that the Administrative Law Judge ("ALJ") committed reversible errors at steps three through five of the sequential analysis required by 20 C.F.R. § 404.1520. The Commissioner, in turn, moves for an order affirming the ALJ's decision. I deny Byron's motion and affirm the Commissioner's decision.

## I. BACKGROUND

### A. Procedural Facts

Byron is a 52-year-old man with high school education. He worked as an HVAC technician for fifteen years. He alleged disability as of October 2015, due to a torn tendon in his right arm, right ulnar nerve transposition at elbow, carpal tunnel syndrome, diabetes, a herniated disc in the neck, sleep apnea, and a brain tumor.

Byron's application was initially denied in February 2017. On October 25, 2017, he testified at a hearing before ALJ Thomas

Merrill, who ultimately denied Byron's claim. See Tr. 17-28. The Appeals Council denied his request for review in June 2018, rendering the ALJ's decision the final decision of the Commissioner. See Tr. 3-8. Byron now appeals.

**B.    Medical Evidence**

In March 2015, Byron suffered a work-related injury to his right elbow while carrying a tall ladder. After doing light-duty work for the next several months, he stopped working in October 2015.

Between July 2015 and April 2017, Byron underwent four surgeries to his right arm. After an MRI showed a partial tear of the extensor muscles in that arm, Dr. Richard Choi performed a right epicondyle debridement and partial tendon excision. Tr. 262, 298. Byron had occupational therapy post-surgery. See Tr. 380-89.

When Byron continued to complain of pain and clicking in his right elbow, Dr. Choi performed a second surgery, a right radiocapitellar anterior capsulectomy, in October 2015. Tr. 260. Following the surgery, Byron did a second round of occupational therapy. Tr. 352-78.

In April 2016, Dr. Choi performed a third surgery on Byron's right arm, a right ulnar nerve transposition, after an EMG showed ulnar nerve neuropathy. Tr. 258, 450. Byron again underwent occupational therapy. May and June 2016 occupational

2

therapy records noted that he was restricted from performing heavy activities with his right arm, but that he remained independent in personal care activities, with some limitations in more demanding activities such as camping. Tr. 336.

At a follow-up visit in June 2016, Dr. Choi noted that Byron reported pain over his right ulnar nerve, but that his sensation and elbow motion were intact. Tr. 266-67. Later that month, Dr. Choi's only clinical finding was radial tunnel pain. Tr. 264-65. Byron's elbow motion was unremarkable and there were no other sensory or motor problems. Id.

In September 2016, Byron presented to his primary care physician, Dr. Elias Nabbout, requesting sleep medication and a referral to a second orthopedic surgeon. Tr. 309-10. Dr. Nabbout observed normal sensation and motor strength, with no abnormalities of the extremities, and full range of motion of the joints without swelling or tenderness. Id.

The following month, Byron reported to Dr. Steven Alter a history of right arm pain and surgical treatment, but positive findings were limited to tenderness and modest loss of right grip strength, without loss of range of motion. Tr. 319-20. He was able to make a fist and demonstrated normal wrist strength. Id. An MRI of Byron's right elbow performed that same month showed mild widening the radiocapitellar joint and a mild sprain of the radial collateral ligament. Tr. 452-53, 325.

3

In December 2016, orthopedic surgeon Dr. Charles Cassidy examined Byron and observed full range of motion of the right elbow and wrist, with some tenderness and decreased grip strength. Tr. 325. In light of the findings of positive ulnar nerve neuropathy and Byron's continued complaints of pain, Dr. Cassidy recommended a radial nerve release surgery. See Tr. 325-26.

State agency physician Dr. Louis Rosenthall reviewed Byron's records in January 2017. He opined that Byron was limited to frequent reaching with his right arm, should avoid concentrated exposure to hazards such as machinery and heights, could lift and carry 25 pounds occasionally and 20 pounds frequently, and could stand, walk or sit for 6 hours in an 8-hour workday. Tr. 57-61. Dr. Rosenthall noted that Byron had three surgeries and complained of persistent pain in his right elbow, but multiple clinical examinations within the past year were "very reassuring, with only abnormality being ligamentous laxity of lateral ulnar collateral ligament." Tr. 59.

Dr. Cassidy performed a fourth and final surgery on Byron's right arm in April 2017. After the surgery, Dr. Cassidy observed mild residual tenderness, but also improved range of motion in the right arm. Tr. 417-19, 421-23. Byron had diminished strength, but he maintained the ability to make a fist. Id. He also reported to Dr. Cassidy that his pain was

4

well controlled, that he no longer needed prescription pain medication, and that he was taking Tylenol as needed. Tr. 423.

In September 2017, one-time examining orthopedist Dr. Robert Pennell examined Byron. Tr. 454-59. Byron complained of continued pain, weakness, numbness, and tingling when he saw Dr. Pennell. Id. He reported that his pain felt better with prescription pain medication, Tramadol and Gabapentin. Id. On examination, he was able to raise both arms straight overhead, exhibited a range of motion between 5 and 145 degrees in his right elbow and between 0 and 150 degrees in his left elbow, had reduced grip strength in his right hand, and had good and equal abduction strength of the fingers of both hands, with mild weakness of adduction of the fingers on the right side. Tr. 457. Dr. Pennell opined that Byron had significant restrictions to lifting, gripping, twisting and pinching with the right hand, and that he was "totally and permanently disabled." Tr. 458.

**C.   The ALJ's Decision**

The ALJ assessed Byron's claim under the five-step, sequential analysis required by 20 C.F.R. § 404.1520. At step one, he found that Byron had not engaged in substantial gainful activity since October 13, 2015, his alleged disability onset date. Tr. 19. At step two, the ALJ found that Byron's right upper extremity impairment was severe. Tr. 19. The ALJ also found that his diabetes, colitis, brain tumor, bilateral carpal

5

tunnel syndrome, mild obesity, and spinal impairment were not severe impairments. Tr. 20-21. At step three, the ALJ determined that none of Byron's impairments, considered individually or in combination, qualified for any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 21-22; see 20 C.F.R. § 404.1520(d).

The ALJ then found that Byron had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c), except he could only lift and carry 25 pounds occasionally and 20 pounds frequently; he had unlimited use of the hands and feet to operate controls, push, and pull; he could occasionally climb ladders, scaffolds, and ropes; he could frequently crawl; and he was limited to frequent reaching with his right upper extremity. Tr. 22.

The ALJ gave "great weight" to Dr. Rosenthall's opinion, finding it consistent with, and well supported by, Byron's treatment records. Tr. 26. Acknowledging that Byron underwent another surgery after Dr. Rosenthall's review, the ALJ noted that post-operative examination records were substantially similar to the records available to Dr. Rosenthall. Id. The ALJ gave "little weight" to Dr. Pennell's opinion, because it was based on a one-time examination and was inconsistent with the longitudinal treatment record. Tr. 25-26.

Relying on the testimony of a vocational expert, the ALJ then found at step four that Byron could perform his past relevant work as an HVAC technician. Tr. 26-27. In the alternative, the ALJ found at step five that other jobs exist in the national economy that Byron could perform, including an auto detailer, a hospital cleaner, and a housekeeper/cleaner. Tr. 27-28. Accordingly, the ALJ concluded that Byron had not been disabled from the alleged disability onset date through the date of his decision. Tr. 28.

## II. STANDARD OF REVIEW

I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner. See 42 U.S.C. § 405(g). That review is limited, however, "to determining whether the [Commissioner] used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). I defer to the Commissioner's findings of fact, so long as those findings are supported by substantial evidence. Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765,

769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the Commissioner's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion." Id. at 770. The Commissioner's findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). "Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [him], not for the doctors or for the courts." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (internal quotation marks and brackets omitted).

## III.  **ANALYSIS**

Byron alleges that four errors in the ALJ's decision warrant remand. First, he argues that the ALJ improperly determined at step three of the sequential analysis that his right upper extremity impairment did not met or equal a listed impairment. Second, he contends that the ALJ relied upon outdated agency guidance to evaluate his complaints of pain. Third, Byron argues that the ALJ improperly relied on Dr. Rosenthall's opinion because it was based on an incomplete

8

medical record.  Finally, he maintains that the ALJ posed a deficient hypothetical to the vocational expert ("VE"), tainting the ALJ's conclusions that Byron could perform his past relevant work and other jobs the VE identified.  I address each argument in turn and conclude that none has merit.

**A.   Step Three Evaluation**

At step three of the sequential analysis, the ALJ found that Byron's right upper extremity impairment did not meet or equal a listed impairment.  The ALJ's finding is supported by the record.

An ALJ will find a claimant disabled at step three if the claimant has an impairment that meets the duration requirement and is listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1") or is medically equivalent to a listed impairment.  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.  The claimant bears the burden to show that he has an impairment or a combination of impairments that meets or equals a listed impairment.  Torres v. Sec'y of Health & Human Servs., 870 F.2d 742, 745 (1st Cir. 1989) (per curiam).  The listed impairment that Byron claims he meets, listing 1.02B, pertains to major joint dysfunction.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02B.  The listing requires a claimant to demonstrate "inability to perform fine and gross movements effectively," which requires "an extreme loss of function of both upper extremities."  Id.

The ALJ supportably found that the evidence does not establish that Byron's impairment meets or equals listing 1.02B. No medical source opined that Byron is unable to perform fine and gross movements in both upper extremities. Dr. Pennell concluded that only Byron's right arm impairment limited his ability to work. See Tr. 457-58. Dr. Pennell's examination of the left arm showed normal findings. See id. And Dr. Rosenthall found that Byron did not suffer an extreme loss of function of either arm. See Tr. 57-61.

To the extent Byron maintains that the ALJ should have obtained an updated medical opinion to ascertain whether his impairment medically equaled a listing, he is wrong. Social Security Ruling 17-2p, in effect at the time of the hearing, provides that an ALJ is not required to obtain medical expert evidence at this stage if the ALJ "believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment." SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017). As discussed below, the ALJ supportably relied on Dr. Rosenthall's opinion that Byron did not meet or equal a listed impairment. See Tr. 57-61.

### B. Evaluation of Pain

Byron next argues that the ALJ's RFC determination cannot stand because the ALJ did not properly evaluate his complaints of pain. I find that the ALJ supportably discounted his

subjective reports regarding the intensity, persistence, and limiting effects of pain as not entirely consistent with the medical evidence and other evidence in the record.

In crafting a claimant's RFC, an ALJ must consider all of a claimant's alleged symptoms and determine the extent to which those symptoms can reasonably be accepted as consistent with objective medical evidence and other record evidence. 20 C.F.R. § 404.1529(a); SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). This involves a two-step inquiry. First, the ALJ must determine whether the claimant has a "medically determinable impairment" that could reasonably be expected to produce his alleged symptoms. SSR 16-3p, 2016 WL 1119029, at *3. Second, the ALJ evaluates the "intensity, persistence, and limiting effects of [those] symptoms" to determine how they limit the claimant's ability to perform work-related activities. Id. at *4. The ALJ must "examine the entire case record" in conducting this evaluation, including objective medical evidence, the claimant's own statements and subjective complaints, and any other relevant statements or information in the record. Id.; see Coskery v. Berryhill, 892 F.3d 1, 4 (1st Cir. 2018).

The ALJ cannot disregard the claimant's statements about his symptoms solely because they are unsubstantiated by objective medical evidence. See SSR 16-3p, 2016 WL 1119029, at *5. Rather, an inconsistency between subjective complaints and

objective medical evidence is just "one of the many factors" to consider in weighing the claimant's statements. Id.

Other factors the ALJ must consider, known as the "Avery factors" in the First Circuit, include (1) the claimant's daily activities;(2) the location, duration, frequency, and intensity of the pain or symptom; (3) any precipitating and aggravating factors; (4) the effectiveness of any medication currently or previously taken; (5) the effectiveness of non-medicinal treatment; (6) any other self-directed measures used to relieve pain; and (7) any other factors concerning functional limitations or restrictions. Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986); see 20 C.F.R. § 404.1529(c)(3). But the ALJ is not required to address every Avery factor in his written decision for his evaluation to be supported by substantial evidence. Deoliveira v. Berryhill, 2019 DNH 001, 2019 WL 92684, at *5 (D.N.H. Jan. 2, 2019). Instead, the decision need only "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2016 WL 1119029, at *9.

At the hearing, Byron testified that the pain in his right arm was a constant 6 out of 10 and that it prevented him from

doing anything with that arm. Tr. 38-40. The ALJ gave sufficiently specific reasons for discounting Byron's complaints of such disabling pain. First, the ALJ cited the inconsistency between Byron's complaints and the objective medical evidence. The ALJ correctly noted that clinical examinations throughout the relevant period did not evidence a profound loss of function in Byron's right arm and showed that he had retained significant strength and mobility in that arm. Second, the ALJ cited medical records showing that Byron was not taking regular pain medication, despite his complaints of pain. Third, the ALJ considered Byron's daily activities. Specifically, he cited occupational therapy records noting that although Byron was restricted from performing heavy activities with his right arm, he remained independent in personal care activities, with only some limitations in more demanding activities such as camping. Accordingly, the ALJ's decision to discount Byron's statements concerning the intensity, persistence, and limiting effects of his pain is entitled to deference.

Byron alleges error because the ALJ's decision cited a superseded agency ruling concerning subjective symptom evaluation. Specifically, he argues that the ALJ relied on SSR 96-7p, which was superseded by SSR 16-3p in March 2016. See Coskery, 892 F.3d at 4; SSR 16-3p, 2016 WL 1119029, at *1. As Byron acknowledges, the ALJ also cited SSR 16-3p. He then

13

proceeded to evaluate Byron's complaints consistent with the operative ruling. I am satisfied that the ALJ applied the correct standard and that his evaluation of Byron's subjective symptoms is supported by substantial evidence.

In any event, any error that stems from the ALJ's citation to SSR 96-7p is harmless. In enacting SSR 16-3p to replace SSR 96-7p, the agency primarily sought to "eliminate the use of the term 'credibility' from the sub-regulatory policy to make clear that a subjective symptom evaluation is not an examination of an individual's character." Coskery, 892 F.3d at 6 (internal quotation marks and brackets omitted); see SSR 16-3p, 2016 WL 1119029, at *1 n.1. "Despite that change, SSR 16-3p is materially the same as its predecessor . . . ." Freddette v. Berryhill, 2019 DNH 003, 2019 WL 121249, at *8 n.5 (D.N.H. Jan. 7, 2019). As nothing in the ALJ's decision suggests that his reliance on the outdated ruling prejudiced Byron, remand on this basis would "amount to no more than an empty exercise." See Ward, 211 F.3d at 656.

### C. Dr. Rosenthall's Opinion

Byron contends that Dr. Rosenthall's opinion was based on a significantly incomplete record and therefore cannot bear "great weight" that the ALJ attributed to it. I disagree.

It can be reversible error for an ALJ to rely on an opinion of a non-examining consultant who has not reviewed the full

14

medical record. Brown v. Colvin, 2015 DNH 141, 2015 WL 4416971, at *3 (D.N.H. July 17, 2015); Ferland v. Astrue, 2011 DNH 169, 2011 WL 5199989, at *4 (D.N.H. Oct. 31, 2011). But "the fact that an opinion was rendered without the benefit of the entire medical record does not, in and of itself, preclude an ALJ from giving significant weight to that opinion." Meldrem v. Colvin, 2017 DNH 096, 2017 WL 2257337, at *2 (D.N.H. May 23, 2017) (quoting Coppola v. Colvin, 2014 DNH 033, 2014 WL 677138, *8 (D.N.H. Feb. 21, 2014)). The ALJ may rely on such an opinion "where the medical evidence postdating the reviewer's assessment does not establish any greater limitations, or where the medical reports of claimant's treating providers are arguably consistent with, or at least not 'clearly inconsistent' with, the reviewer's assessment." Id. (quoting Ferland, 2011 WL 5199989, at *4).

The ALJ bears the burden of showing that either of these conditions is present and must make that determination "adequately clear." Giandomenico v. U.S. Soc. Sec. Admin., 2017 DNH 237, 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017). In doing so, the ALJ may not interpret "raw medical data . . . until its functional significance is assessed by a medical expert." Id. at 5; see Manso-Pizzaro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996). But he may make "common-sense judgments about functional capacity based on

15

medical findings," within "the bounds of a lay-person's competence." Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990). Such judgments are possible "where the evidence shows a 'relatively mild physical impairment posing, to the layperson's eye, no significant restrictions.'" Giandomenico, 2017 WL 5484657, at *4 (quoting Roberts v. Barnhart, 67 F. App'x 621, 623 (1st Cir. 2003)).

Dr. Rosenthall rendered his opinion in January 2017, based on an assessment of extensive medical records, including the outcomes of the first three surgeries on Byron's right arm. The ALJ acknowledged that there were additional treatment records through September 2017, including the outcome of Byron's fourth surgery. But he found that those records were substantially similar to the records Dr. Rosenthall reviewed and did not show a functionally meaningful deterioration in Byron's condition.

Substantial evidence supports the ALJ's conclusion that the subsequent records are not inconsistent with Dr. Rosenthall's opinion. The ALJ did not improperly rely on raw medical data in reaching that conclusion but "instead focused on treatment notes interpreting raw diagnostic results and symptom comparisons across the record." Marino v. U.S. Soc. Sec. Admin., 2018 DNH 191, 2018 WL 4489291, at *6 (D.N.H. Sept. 19, 2018). The ALJ explained that after the April 2017 surgery, Dr. Cassidy, Byron's surgeon, noted improved range of motion in the right

16

upper extremity, with only mild residual tenderness. Tr. 25, 417-19, 421-23. Despite diminished grip strength, Byron maintained the ability to make a fist. Id. Dr. Cassidy also noted that Byron's pain was well controlled, that he no longer needed prescription pain medication, and that he was taking Tylenol as needed. Tr. 423. Thus, the ALJ acted within the bounds of lay competence when he concluded that the new records were not inconsistent with Dr. Rosenthall's opinion and that the fourth surgery "improved the claimant's function without substantial residual losses of strength and mobility." Tr. 25.[1]

Byron also points out that Dr. Rosenthall did not review Dr. Pennell's examination results and opinion. Dr. Pennell had assessed significant restrictions to lifting, gripping, twisting and pinching with the right hand. See Tr. 457-58. The ALJ assigned that opinion "little weight" because it was from a one-time examiner and was inconsistent with the longitudinal treatment record showing that Byron retained significant functioning in his right arm. Tr. 25-26. Those are permissible reasons, supported by substantial evidence, to discount the opinion. See Johnson v. Berryhill, 2017 DNH 214, 2017 WL

---

[1] Byron lists certain other records that Dr. Rosenthall did not review, but he makes no argument as to how this evidence demonstrates a deterioration in his condition. In any event, the ALJ considered those records and supportably concluded that they are consistent with Dr. Rosenthall's opinion.

4564727, at *5 (D.N.H. Oct. 12, 2017) (noting that "supportability of the opinion by evidence in the record" and "frequency of examination" are among the factors an ALJ must consider when weighing the testimony of a physician who is not a treating source). Further, the ALJ permissibly rejected Dr. Pennell's opinion that Byron was "totally and permanently disabled." Such a statement is not a medical opinion but a legal conclusion reserved for the ALJ. See 20 C.F.R. § 404.1527(d)(1).

In sum, the ALJ's adoption of Dr. Rosenthall's opinion despite the subsequent record was adequately explained and supported by the record.

**D. Evaluation at Steps Four and Five**

Finally, Byron challenges the ALJ's findings at steps four and five of the sequential analysis that he could perform his past relevant work as an HVAC technician, as well as other jobs in the national economy, including an auto detailer, a hospital cleaner, and a housekeeper/cleaner. At the hearing, the ALJ presented the vocational expert with a hypothetical question that matched the ALJ's RFC finding, and the VE testified that a person with those limitations could perform the above listed jobs. Byron argues that the hypothetical, and by extension the RFC, was based on Dr. Rosenthall's opinion but failed to include two limitations that Dr. Rosenthall had identified: (1) limited

18

reaching with the right upper extremity, and (2) avoiding concentrated exposure to hazards.

Byron is wrong that the hypothetical and the RFC deviated from Dr. Rosenthall's opinion as to reaching. Dr. Rosenthall stated that Byron was "[l]imited" in his ability to reach overhead, in front, and/or laterally with the right extremity. Tr. 59. In the comments section on the same page, Dr. Rosenthall explained that he "should limit dominant RT frontal & overhead reaching to frequent use through the workday." Id. The ALJ included this limitation in the RFC and in the hypothetical presented to the VE, stating that Byron "is limited to frequent reaching with the right upper extremity." Tr. 22, 46. The VE testified that both the HVAC job and the jobs he identified would allow for such a limitation. Tr. 46-47.

Byron is correct, however, that the ALJ's hypothetical and the RFC failed to include Dr. Rosenthall's limitation to avoid concentrated exposure to hazards such as machinery and heights. But the ALJ's error is harmless. Courts routinely find harmless error "where an alleged limitation that was not included in the ALJ's hypothetical (or in the RFC) was not necessary to perform one or more of the jobs identified by the vocational expert, according to the Dictionary of Occupational Titles." Freddette, 2019 WL 121249, at *7 (internal quotation marks and brackets omitted).

Byron's past relevant work, as well the jobs identified by the VE, all accommodate the omitted limitation.  The Dictionary of Occupational Titles ("DOT") specifies that hazards, including moving mechanical parts, electric shock, high exposed places, radiation, explosives, toxic caustic chemicals, and other environmental conditions are "Not Present" in any of the jobs identified.  See DOT § 637.261-014, 1991 WL 685487 (HVAC technician); DOT § 915.687-034, 1991 WL 687878 (auto detailer); DOT § 323.687-010, 1991 WL 672782 (hospital cleaner); DOT § 323.687-014, 1991 WL 672783 (housekeeper/cleaner).  Because the ALJ identified jobs that Byron could perform even if the limitation on exposure to hazards were imported, the error in failing to assess it was harmless.  Cf. Ward, 211 F.3d at 656.

## IV.  **CONCLUSION**

Pursuant to sentence four of 42 U.S.C. § 405(g), I grant the Commissioner's motion to affirm (Doc. No. 9) and deny Byron's motion for an order reversing the Commissioner's decision (Doc. No. 7).  The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/ Paul Barbadoro
Paul J. Barbadoro
United States District Judge

August 14, 2019

cc:  Darlene M. Daniele, Esq.
     Sarah E. Choi, Esq.